IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM D. WILSON, *as Administrator of the Estate of William D. Wilson, II*, <br>　　Plaintiff, | ) ) ) ) ) | |
| v. | ) | CIVIL ACTION NO. 1:23-00207-KD-N |
| HUEY HOSS MACK, *et al.*, <br>　　Defendants. | ) ) ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court[1] on the following motions, each of which has been briefed and is ripe for disposition:

(1) Defendant Huey Hoss Mack's motion to dismiss (Docs. 24, 25, 37, 38);

(2) Defendant Quality Correctional Health Care, Inc.'s motion to dismiss (Docs. 29, 30, 37, 39);

(3) Plaintiff William D. Wilson's motion for leave to issue a pre-discovery non-party subpoena (Docs. 20, 26); and,

(4) Defendant Quality Correctional Health Care, Inc's motion for entry of a HIPAA Protective Order (Doc. 35)

Upon consideration and for the reasons stated herein, the undersigned **RECOMMENDS** both motions to dismiss be **GRANTED in part** with respect to Counts I, II and V of Plaintiff's amended complaint and that those counts be **DISMISSED with prejudice** for failure to state a claim, but that the Court **DENY in part**, without prejudice, both motions to dismiss with respect to the state law

---

[1] The District Judge assigned this to case has referred these motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72 and S.D. Ala. GenLR 72(a); *See* S.D. Ala. GenLR 72(b) (10/10/2023, 10/20/2023, 11/7/2023, 11/8/2023 elec. refs.).

1

claims in Counts III and IV, for which the undersigned **RECOMMENDS** the Court **DECLINE** to exercise supplemental jurisdiction and **REMAND** the same to the Circuit Court of Baldwin County, Alabama.[2]

## I. Background

### A. Procedural History

Plaintiff William D. Wilson, as administrator of the estate of William D. Wilson II,[3] initiated this action in the Circuit Court of Baldwin County, Alabama on May 3, 2023. (Docs. 1, 1-2). Defendant Huey Hoss Mack, Sheriff of Baldwin County ("Sheriff Mack"), was served May 8, 2023, and subsequently removed the action to this Court on June 5, 2023, pursuant to 28 U.S.C. §§ 1331, 1343, 1441(a) and 1446. (Doc. 1). Upon removal, Sheriff Mack moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and to strike fictitious defendants identified therein. (Docs. 3, 5). By order dated August 25, 2023, the motion strike was granted in part and denied in part,[4] and Plaintiff was ordered to file an amended complaint. (Docs. 15, 16).

---

[2] In accordance with these recommendations, the undersigned further **RECOMMENDS** Plaintiff's motion for leave to issue a pre-discovery non-party subpoena (Doc. 20) and Quality Correctional Health Care Inc.'s motion for entry of a HIPAA protective order (Doc. 29) be **DENIED as moot**.

[3] Wilson, as administrator of Wilson II's estate, has standing to bring this action pursuant to Ala. Code §§ 43-2-833(c), 43-2-843(18) and Fed. R. Civ. P. 17(b). *See Warren v. Ala. DOT*, 2012 U.S. Dist. LEXIS 189259, *6-10 (N.D. Ala. Oct. 10, 2012) ("An action filed on behalf of the estate must be brought by the [decedent's personal representative]." (citing *Douglass v. Jones*, 628 So. 2d 940, 941 (Ala. Civ. App. 1993)). The Letters of Administration attached to the original complaint indicate Wilson is authorized to proceed as Wilson II's personal representative. (Doc. 1-2, PageID.12).

[4] The undersigned granted in part Sheriff Mack's motion to strike with respect fictitious defendants C-Z, but denied the same as to fictitious defendants A-C. (*See* Doc. 15). After noting the long-standing principle that "fictitious-party pleading is not permitted in federal court," *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) and examining the limited exceptions to this rule identified in *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992), *see Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857 (11th Cir. 2014) (applying *Dean*), the undersigned found the description of fictitious defendants A-C sufficient for ascertainment in discovery and subsequent service under Fed. R. Civ. P. 4, but that descriptions of fictitious defendants C-Z were too vague to permit the same. (*See* Doc. 15).

2

The operative amended complaint was filed October 7, 2023, adding Defendant Quality Correctional Health Care, Inc. ("QCHC") to the action. (Doc. 19). The amended complaint invokes this Court's jurisdiction under 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1367. (*Id.*). Venue in this district is properly alleged. 28 U.S.C. § 1391(b)(2). (*Id.*). Alongside his amended complaint, Plaintiff filed a motion for leave to issue a pre-discovery non-party subpoena (Doc. 20), which Sheriff Mack opposed (Doc. 26). The amended complaint includes both federal constitutional and state law claims, set out in the following counts:

> **Count I** is a Fourteenth Amendment claim for deliberate indifference to a serious medical need, brought pursuant to 42 U.S.C. § 1983 against Sheriff Mack and QCHC.
>
> **Count II** is a state law wrongful death claim (Ala. Code § 6-5-140) brought pursuant to 42 U.S.C. § 1983 against Sheriff Mack and QCHC.
>
> **Count III** is a state law claim for failure to provide necessary medical attention (Ala. Code § 14-6-19) against Sheriff Mack and QCHC.
>
> **Count IV** is a state law medical malpractice claim (Ala. Code § 6-5-582) against QCHC.
>
> **Count V** is a *Monell*[5] claim against Sheriff Mack under 42 U.S.C. § 1983.

(Doc. 19). For relief, Plaintiff seeks: (1) a judgment that the policies, practices, procedures and customs of Defendants violate the Fourteenth Amendment, (2) punitive and compensatory damages, including (3) pre-judgment and post judgment interest at the highest rates permitted, and (4) other relief, including fees and expenses. (*Id.*).

---

5 *Monell* and its progeny set out when local governments may be sued pursuant to 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

3

On October 20, 2023, Sheriff Mack filed his operative motion to dismiss the amended complaint with memorandum in support for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Docs. 24, 25). QCHC filed its motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) with a memorandum in support on November 7, 2023. (Docs. 29, 30). Both motions are fully briefed and ripe. (Docs. 27, 33, 37, 38, 39). While briefing was ongoing, QCHC filed a motion for entry of a HIPAA protective order, which is unopposed. (Docs. 35, 36).

**B. Factual Allegations[6]**

The amended complaint alleges that on or about May 7, 2021, Williams II (hereinafter, the "Decedent") passed away while incarcerated at Baldwin County Jail ("BCJ"). (Doc. 19). The Decedent's certificate of death lists acute basilar subarachnoid hemorrhage as the cause and notes cardiac left ventricular hypertrophy as a significant condition. (*Id*.).[7] At the time of his passing, the Decedent was serving a sentence for a probation violation. (*Id*.). Plaintiff alleges the Decedent's passing was the proximate result of acts and/or omissions by Sheriff Mack, BCJ and/or Baldwin County Sheriff's Office ("BCSO") employees, and QCHC, who is under contract with Baldwin County to provide medical care services to inmates at BCJ. (Docs. 19, 37-1).

---

6 At this stage, well-pleaded facts are accepted as true construed in the light most favorable to the non-movant. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted).

7 In lay terms, and at the risk of oversimplification, this is an aneurysm coupled with an underlying heart condition. *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/subarachnoid-hemorrhage (last visited Feb. 6, 2024); https://www.heart.org/en/health-topics/heart-valve-problems-and-disease/heart-valve-problems-and-causes/what-is-left-ventricular-hypertrophy-lvh (last visited Feb. 6, 2024).

4

## II. Legal Standards

Under Fed. R. Civ. P. 12(b)(6) a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). Facial plausibility is present "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … [this standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Put simply, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## *III. Discussion*

Plaintiff's amended complaint proceeds pursuant to 42 U.S.C. § 1983 and brings both federal constitutional and state law claims against Sheriff Mack and QCHC. (Doc. 19). The undersigned begins with the constitutional claims in Counts I, II and V, before addressing the purely state law claims in Counts III and IV.

5

### A. Constitutional Claims

1. <u>Sheriff Mack – Qualified Immunity (Counts I & V)</u>

For Plaintiff's constitutional claims in Counts I (deliberate indifference) and V (*Monell*), Sheriff Mack has invoked qualified immunity, which "aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Johnson v. Conway*, 688 F. App'x 700, 705 (11th Cir. 2017) (per curiam) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). It provides complete protection for "government officials engaged in job duties from individual liability unless they violate 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2013) (brackets in original)). Stated differently, "[u]nder qualified immunity, all but the plainly incompetent or one who is knowingly violating the federal law are shielded from litigation." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (internal quotations and citation omitted). An official asserting qualified immunity "must first establish that he was acting within the scope of his discretionary authority." *Id.* Once established, the burden shifts to the plaintiff to show qualified immunity is not appropriate. *Id.* (citations omitted).

The Supreme Court has established a two-part test for evaluating assertions of qualified immunity:

> (1) whether, taken in the light most favorable to the injured party, the facts alleged show the officer's conduct violated a constitutional right;

and (2) if the right violated under those alleged facts was clearly established at the time the alleged violation occurred.

*Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citation omitted). *See Johnson*, 688 F. App'x at 706 (noting courts "may consider whether the plaintiff has satisfied his burden in any order") (internal citation and quotation omitted)). "For a plaintiff to overcome a claim of qualified immunity, both questions must be answered affirmatively. If the answer to one is 'no,' the court need not reach the other." *Myrick*, 69 F.4th at 1297.

There is no dispute here that Sheriff Mack was acting within the scope of his discretionary authority at all times relevant; accordingly, the burden shifts to Plaintiff to show qualified immunity is not appropriate. He fails to do so.

Plaintiff's Count I does not directly implicate Sheriff Mack in the events surrounding the Decedent's passing. (Doc. 19). Instead, his claim is predicated on a theory of supervisory liability, and the standard for imposing liability in such a circumstance is "extremely rigorous." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citation omitted). The Eleventh Circuit explains in *Gray v. Bostic*:

> Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. *Id*.

458 F.3d 1295, 1308 (footnote omitted). Given that Count I is devoid of any allegation of Sheriff Mack's personal participation, Plaintiff proceeds via the second route by attempting to establish a causal connection between Sheriff Mack's acts and/or

7

omissions and the alleged constitutional violation. (Doc. 19).

To establish the requisite causal connection to impose supervisory liability, a plaintiff must "demonstrate[] that a supervisor's policy or custom resulted in 'deliberate indifference to constitutional rights.'" *Piazza*, 923 F.3d at 957 (citation and footnote omitted). A plaintiff can also point to the absence of a policy resulting in a violation of constitutional rights. *Id*. (citation omitted). "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Id*. (internal citations omitted).

Plaintiff concedes in his opposition response that he has failed to plausibly allege a supervisory liability claim against Sheriff Mack in Count I. (Doc. 37). He expressly states therein that "he does not now have sufficient data to allege or prove his failure to train claim or develop the policy for which lead to Constitutional violations." (Doc. 37, PageID.173). The response further states:

> The Plaintiff simply asks that he be allowed limited discovery to expose similar circumstances in the past putting Mack on notice for a failed policy that lead to the constitutional violations alleged. Or in the alternative, the Plaintiff should have an opportunity to show the court that the Sheriff had a specific policy in place that would violate constitutional rights.

(Doc. 37, PageID.173).

This concession is fatal to his supervisory liability claim for at least two reasons. First, it indicates Plaintiff does not and cannot state at this time what the custom or policy is which resulted in the alleged constitutional violation – indeed, he is not even sure if one exists and seeks the keys to unlock discovery so that he can

8

"show the court" what that policy is. (*Id.*). The time for Plaintiff to plausibly identify that policy was in his amended complaint, and he did not do so. Second, even if Plaintiff could identify the relevant policy, he admits that he cannot point to the multiple incidents necessary to establish the requisite causal connection. *Piazza*, 923 F.3d at 957. Instead, he again seeks discovery so that he can "expose similar circumstances in the past putting Mack on notice." (*Id.*). However, federal courts "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79, and here, conclusions are all Plaintiff has.

Also conclusory are the allegations of Plaintiff's Count V, which attempts to bring a *Monell* claim against Sheriff Mack in his capacity as a policymaker. (Doc. 19). Assuming *arguendo* that Sheriff Mack is indeed a policymaker for Baldwin County, the same concession fatal to Plaintiff's supervisory liability claim is also fatal here. Under *Monell*, "a county is liable only when the county's official policy causes a constitutional violation." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (internal quotation omitted). Naturally then, a plaintiff "must identify a municipal policy or custom that caused his injury," and he can do so in two ways: by "identify[ing] either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.* (citations omitted). Plaintiff makes no assertion of official policy, instead relying on the "unofficial custom or practice" approach. Yet, he concedes he cannot presently identify the pertinent unofficial custom or practice. (Doc. 37, PageID.173). Moreover, he concedes he cannot point to the "repeated acts"

necessary to establish that the yet-to-be-determined custom or practice is so pervasive and permanent that it essentially carries the "force of law." *Grech*, 335 F.3d at 1329; *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).

In sum, the undersigned finds Plaintiff has conceded that he fails to state a claim against Sheriff Mack in Counts I and V. Without a custom or policy to point to, or the "repeated acts" or "multiple incidents" necessary to establish the same, Plaintiff simply cannot state a plausible claim of a constitutional violation under either approach. *Piazza*, 923 F.3d at 957; *Grech*, 335 F.3d at 1329. As a result, the undersigned finds Plaintiff fails to satisfy his burden of demonstrating Sheriff Mack is not entitled to qualified immunity and **RECOMMENDS** Counts I and V be **DISMISSED with prejudice** as they relate to Sheriff Mack.

2. Sheriff Mack – Absolute Immunity (Count II)

Count II brings a state law wrongful death claim against Sheriff Mack under Ala. Code § 6-5-410 pursuant to 42 U.S.C. § 1983. (Doc. 19). Sheriff Mack moves to dismiss this count on absolute immunity grounds. (Doc. 25).

The Alabama Constitution provides: "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. 1, § 14. The State's immunity extends to arms of the state, including sheriffs. Ala. Const. art. V, § 112 ("The executive department shall consist of… a sheriff for each county."). Further, the Eleventh Circuit has held "that an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288 (11th Cir. 1998). The Alabama Supreme Court explains in *Ex*

*parte Sumter County*:

> [S]heriffs and deputy sheriffs are executive officers of this State, pursuant to the Ala. Const. 1901, Art. V, § 112. *Parker [v. Amerson* 519 So. 2d [442,] 443. Moreover, claims against sheriffs and deputy sheriffs are "barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901," *Coleman v. City of Dothan*, 598 So. 2d 873, 875 (Ala. 1992) (quoting *White v. Birchfield*, 582 So. 2d 1085, 1088 (Ala. 1991)), when the sheriffs or the deputies were "acting within the line and scope of their employment." *Ex parte Purvis*, 689 So. 2d 794, 795 (Ala. 1996).

953 So. 2d 1235, 1239 (Ala. 2006). This sweeping immunity is susceptible to only limited exceptions when a state officer or employee "acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." *Ex parte Purvis*, 689 So. 2d at 795.

Each of Plaintiff's allegations relate to and arise out of Sheriff Mack's official duties in operating the BCJ. (Doc. 19). Accordingly, he is entitled to share in the State's absolute immunity from suit unless any of the limited exceptions identified in *Ex parte Purvis* are applicable. Here, Plaintiff does not allege, nor does the undersigned find that any of those exceptions apply. Thus, Plaintiff's wrongful death claim against Sheriff Mack is barred by sovereign immunity, and the undersigned **RECOMMENDS** Sheriff Mack be **DISMISSED with prejudice** from Count II.

3. <u>QCHC</u>

The only two constitutional claims brought against QCHC are Count I's deliberate indifference claim and Count II's state law wrongful death claim brought under 42 U.S.C. § 1983. (Doc. 19). QCHC argues it should be dismissed from both for two primary reasons: (1) the applicable statute of limitations bars the claims and they

11

do not relate back, and (2) even if they did, Plaintiff otherwise fails to state a claim under federal pleading standards (Count I) and the AMLA (Count II). Even assuming timeliness, the undersigned finds Plaintiff fails to state a plausible claim against QCHC in either count. Plaintiff's allegations with respect to QCHC's deliberate indifference are the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that federal pleading does not permit, *Iqbal*, 556 U.S. at 678, and his wrongful death claim against QCHC does not satisfy AMLA's pleading requirements.

### a. Deliberate Indifference (Count I)

A claim for deliberate indifference includes both an objective and subjective component, and a plaintiff must show: (1) an objectively serious medical need, (2) that defendant(s) were deliberately indifferent toward that medical need (the subjective component) and (3) causation. *Myrick*, 69 F.4th at 1304-05 (citation omitted).

An objectively serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citation omitted). The need "must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citation omitted). The amended complaint describes the pertinent serious medical need here as acute basilar subarachnoid hemorrhage with cardiac left ventricular hypertrophy as a significant condition. (Doc. 19). *See* n.7. This condition is objectively serious by any measure, so the first factor of this claim is satisfied.

Satisfying the second factor requires a showing of three sub-factors: "(1)

subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." *Myrick*, 69 F.4th at 1305. The *Nam Dang* Court explains:

> Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099-100 (11th Cir. 2014). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).
>
> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds* by *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *See Harris v. Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) (citing *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990)). Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

*Id.* (alterations in original).

Plaintiff's claim for deliberate indifference claim fails on this second factor because he does not plausibly allege that QCHC was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Caldwell*, 748 F.3d at 1099. The claim against QCHC is based on an alleged failure to do a proper medical intake, failure to provide adequate medical care and failure to provide

13

proper staffing at BCJ, as required by its contract with the county. (Doc. 19). The amended complaint also contends QCHC ignored signs of medical distress including trouble breathing, failed to adhere to jail policies, failed to render medical aid and generally denied medical treatment as requested. (*Id*.). However, these assertions are conclusory and otherwise unsupported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

For example, Plaintiff alleges QCHC "failed to do a proper medical intake." (Doc. 19). But he does not indicate what a proper intake would entail (assuming one was conducted in the first place) or explain how QCHC's intake was deficient – only that it was. This is conclusory. Similarly, Plaintiff contends QCHC failed to provide adequate care, failed to render aid and generally denied medical care as requested. (*Id*.). Yet, he does not describe what care was provided, if any, opine what adequate care would have looked like, indicate what requests for aid were made and denied, point to who denied the requests for care or describe how any defendant was on notice that care was needed. (*Id*.). Further, while Plaintiff contends defendants ignored signs of medical distress including trouble breathing, he does not identify who ignored those signs or how they would have been made aware of those signs of distress – only that they did. This is also conclusory. Finally, Plaintiff contends QCHC failed to provide proper staffing as required by its contract with the county and failed to adhere to jail policies. Yet, he does not describe what the contract required[8] and does not point to any applicable jail policies, nor describe how either defendant acted in

---

8 Plaintiff attaches the contract to his opposition response as an "Exhibit A," but does not identify which provisions are relevant here or how QCHC failed to meet its contractual obligations.

non-compliance with the same – only that they were. Again, this is conclusory.

In short, Plaintiff's deliberate indifference claim against QCHC is based solely on conclusory assertions of the company's liability arising from the fact that it was under contract with the county to provide care to BCJ inmates, and the Decedent passed away while at BCJ. This is insufficient to state a plausible claim. Accordingly, the undersigned **RECOMMENDS** QCHC be **DISMISSED with prejudice** from Count I for failure to state a claim.

### b. *Wrongful Death (Count II)*

QCHC's motion to dismiss contends this count is governed by the Alabama Medical Liability Act ("AMLA"). Ala. Code § 6-5-481 *et seq*. (Doc. 30). Notably, Plaintiff does not mention the AMLA in his amended complaint, despite the statute providing: "In any action for injury, damages, or *wrongful death*, whether in contract or tort, against a health care provider for breach of the standard of care… the [AMLA] shall govern the parameters of discovery and all aspects of the action." Ala. Code § 6-5-551 (emphasis supplied). Plaintiff also does not contest QCHC's assertion of AMLA's applicability in his opposition response. (Doc. 37). Given that the amended complaint identifies QCHC as a health care provider within the meaning of Ala. Code § 6-5-481, *see* Ala. Code § 6-5-542(1), and that Count II involves an alleged failure by QCHC and/or its employees to meet an applicable standard of care, the undersigned agrees with QCHC that AMLA governs this cause of action. *See Carr v. Marshall County Sheriff's Office*, 2013 U.S. Dist. LEXIS 61150, *14 (N.D. Ala. Apr. 30, 2013) (applying AMLA to county jail's healthcare provider); *Hastings v. Advanced Corr.*

15

*Healthcare, Inc.*, 2020 U.S. Dist. LEXIS 99032, *8 (N.D. Ala. June 5, 2020) (same).

In pleading a cause of action under AMLA:

> The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts… [a]ny complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551.

While "every element of [an AMLA] cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of these essential elements." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). In general, an AMLA cause of action will be sufficiently stated when it "give[s] the defendant health care provider fair notice of the allegedly negligent act" and when it "identif[ies] the time and place it occurred and the resulting harm." *Taylor v. Starr*, 2021 U.S. Dist. LEXIS 79125, *12 (N.D. Ala. Apr. 26, 2021). Courts evaluating AMLA have drawn a distinction between what is required in pleading acts versus what is what required when pleading omissions. *See Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1189 (S.D. Ala. 2006) (evaluating this distinction). The result is that an AMLA claim based upon an act requires identification of that allegedly negligent act, the time and place of its occurrence and the resulting harm. *Taylor*, 2021 U.S. Dist. LEXIS 79125 at 12. But for a claim based upon an omission, time and place allegations are not required, and identification of the allegedly wrongful or negligent omission will suffice. *See Betts* (concluding "the sanction of dismissal is available

16

[under AMLA] only for inadequately identifying and describing the wrongful act or omission, not for deficiencies in pleading time or place"); *Hobbs v. Powell*, 138 F. Supp. 3d 1328, 1343 (N.D. Ala. Sep. 29, 2015) ("[W]hen a plaintiff alleges an omission as opposed to an act, allegations providing date, time, and place are not required.").

QCHC contends Plaintiff has failed to satisfy AMLA's pleading requirements because he "does not set forth the specific breach of a national standard of care, who breached the standard of care, and specifically the time and place the alleged breach occurred." (Doc. 30, PageID.153). This argument blends each of the AMLA causes of action (Counts II, III, IV) into a single analysis, but QCHC's general point – that Plaintiff's claims are not sufficiently specific – is clear enough. And the undersigned agrees.

Plaintiff's wrongful death cause of action appears to be based on both acts and omissions. (*See* Doc. 19, PageID.102) ("Defendants' wrongful acts or omissions, in disregarding the medical needs of William D. Wilson II…")). But within this count, he does not specify any acts or omissions at all, let alone include "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable." Ala. Code § 6-5-551. While some acts or omissions are noted elsewhere in the amended complaint (e.g., "failed to do a proper medical intake," "failed to provide adequate medical care," "not provid[ing] proper staffing"), Plaintiff does not connect those acts or omissions specifically to Count II. Although even if he had, these contentions are not specific enough to pass muster. Much like the flaws with his deliberate indifference cause of action, Plaintiff does not

describe how the medical intake was improper or who conducted it improperly, does not state how the care received (if any) was inadequate or point to who provided inadequate care, and does not state how QCHC's staffing was improper.

In sum, the undersigned finds Plaintiff's wrongful death claim is not sufficiently stated under AMLA and **RECOMMENDS** QCHC be **DISMISSED with prejudice** from Count II.

### B. Remaining State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3) federal district courts may decline to exercise supplemental jurisdiction if the district court has dismissed the claims over which it has original jurisdiction. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (noting § 1367(c) "strongly encourages" dismissal of state claims when federal claims are dismissed prior to trial). Here, Plaintiff's federal constitutional claims over which this Court has original jurisdiction are in Counts I, II and V, and as stated herein, the undersigned has recommended each of these claims be dismissed with prejudice. Accordingly, the undersigned **RECOMMENDS** the Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims in Counts III and IV, and that those counts be **REMANDED** to the Circuit Court of Baldwin County, Alabama.

### *IV. Conclusion*

Upon consideration and for the reasons stated herein, the undersigned **RECOMMENDS**:

- Sheriff Mack's motion to dismiss be **GRANTED in part** with respect to Counts

I, II and V, and that he be **DISMISSED with prejudice** from the same;

- QCHC's motion to dismiss be **GRANTED in part** with respect to Counts I and II, and that it be **DISMISSED with prejudice** from those counts;

- The Court **DENY in part** both motions to dismiss, without prejudice, and **DECLINE** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts III and IV);

- The Court **REMAND** Counts III and IV to the Circuit Court of Baldwin County, Alabama;

- Plaintiff's motion for leave to issue a non-party subpoena (Doc. 20) and QCHC's motion for entry of a HIPAA protective order (Doc. 35) be **DENIED as moot**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of February 2024.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**